Filed 10/8/20  P. v. Williams CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072975 |
| v. | (Super.Ct.No. RIF088153) |
| CURTIS JOHN WILLIAMS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Kenneth H. Nordin, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.  INTRODUCTION

In 1987, a jury convicted defendant and appellant Curtis John Williams of second degree murder, first degree murder, and rape by force in concert with another.  The jury also found true special circumstance allegations that defendant committed the murder during a kidnapping and rape and that a principal in the murders was armed with a firearm.  In 2019, defendant filed a petition for resentencing pursuant to newly enacted Penal Code section 1170.95,[1] which the trial court denied.  Defendant appealed.

On appeal, defendant argues that his petition was improperly denied because he made a prima facie showing that the provisions of section 1170.95 apply to him.  We affirm.

# II.  FACTUAL AND PROCEDURAL BACKGROUND[2]

"On December 2, 1995, the victims, Vincent [A.] and Sherry [M.], went to a birthday party with Jose [M.] and his brother Eugene.  [Vincent A.] was driving his car.  After attending the birthday party for an hour, the group went to a bowling alley in Moreno Valley.  After [Vincent A.] and [Sherry M.] bowled for an hour, the group left and went to a fast food restaurant.  The group then went to a restaurant in Corona for dinner for about two hours.  [Vincent A.] then dropped off [Jose M. and Eugene M.] at their home at 12:45 a.m.

"Kenneth [R.] was a high school classmate of [Vincent A.] and a friend of [Vincent A.] and [Sherry M.]  Between 1:00 and 2:00 a.m., he was driving in Moreno Valley with

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

[2]  The statement of facts is taken from this court's 2003 opinion affirming defendant's judgment of conviction.  (*People v. Williams* (Sept. 8, 2003, E031301) [nonpub. opn.].)  Though this opinion used the victims' and witnesses' full names, we have abbreviated their names to preserve some measure of anonymity.

three friends when they saw [Vincent A.'s] car in a parking lot at a local park. They went to a nearby golf course to look at the view and returned 20 to 30 minutes later. They decided to surprise their friends and drove into the parking lot.

"When [Kenneth R.] looked in the car, he saw a naked body in the back seat. He and the others realized the person had been shot. They drove to [Vincent A.'s] home to see if he was there, found he was absent and then called police.

"[Vincent A.] had been shot eight times in the head, chest and left arm. Deputies searching the park found [Sherry M.'s] underwear and [Vincent A.'s] clothing in the park and in the victims' car. [Sherry M.] was missing but her body was found before 7:00 a.m. on the side of the 215 freeway in the Sun City area. She had been shot twice in the head. The 10 shell casings collected from both crime scenes were manufactured by six different companies.

"On January 18, 1996, a Redlands police officer stopped a car for having a cracked windshield. The car was eventually impounded and a gun was found under the front seat. It was loaded with different colored bullets from different manufacturers. The driver, Richard Simon, was arrested. Subsequent testing established that the gun was the gun which had been used to kill [Vincent A.] and [Sherry M.] The parties stipulated that DNA evidence established that Simon's DNA was found on [Sherry M.'s] vagina and pants.

"On May 26, 1996, David Fernandez, a sheriff's deputy arrested Simon for a homicide in Moreno Valley that had occurred the previous day. A gun was recovered along with three magazines that were loaded with different colored bullets from different

3

manufacturers.  The homicide occurred outside an apartment occupied by defendant . . . and his car was in the parking lot.[3]  The car was subsequently located and carpet and fiber samples were obtained from it.  The fiber samples from the car were similar to the fibers found on [Sherry M.'s] body.

"The prosecution also introduced a transcript of excerpts from two tape recordings of October 1999, jail conversations between [defendant] and his girlfriend.  The recordings were made when the girlfriend visited [defendant] at the jail.  In the first, [defendant] referred to 'them kids' and said:  'Tell you the truth I just snatched her out the car when he bugged her, threw her to the side of the road. . . .'[4]  In the second, [defendant] said:  '[H]e [presumably Simon] was in the passenger seat too.  He had her in the fro [*sic*] . . . in th [*sic*] . . . in this like all with her knees on the ground and her head in his lap.  Something like that I don't really, I can't even remember everything.'[5]

"The defense rested without presenting any evidence.  Defense counsel argued that Simon was the sole perpetrator, that there was no evidence that defendant was in the park, and the evidence did not support the conclusion that he was an aider and abettor to any of

---

**3**  Footnote 4 of the opinion states:  "Other witnesses testified that Simon and Williams knew each other as friends or acquaintances.  Evidence that they were both members of the Crips gang was excluded."  (*People v. Williams*, *supra*, E031301.)

**4**  Footnote 5 of the opinion states:  "At the penalty trial defendant's girlfriend testified that the word 'bugged' should have been 'bucked,' a slang word meaning 'shot.' " (*People v. Williams*, *supra*, E031301.)

**5**  We have omitted footnote 6 of the opinion.

the crimes. As noted above, defendant was convicted on all charges, although the [Vincent A.] murder was found to be second degree murder."

A jury convicted defendant of second degree murder (Pen. Code § 187, subd. (a), count 1), first degree murder (§§ 187, subd. (a), 189, subd. (a), count 3), and rape by force in concert with another (§§ 261, subd. (a)(2), 264.1, count 3). The jury also found true special circumstance allegations related to count 2 that defendant committed the murder during a kidnapping and rape (§ 190.2, subd. (a)(17)(ii)) and found true enhancement allegations that a principal in the murders was armed with a firearm (former § 12022, subd. (a)(1).) The trial court sentenced defendant to life without the possibility of parole on count 2, an indeterminate term of 15 years to life on count 1 to be served consecutively, and two years to be served consecutively for the firearm enhancements on counts 1 and 2. The court stayed the sentence on count 3 pursuant to section 654.

Defendant appealed his judgment, and in 2003 this court affirmed defendant's conviction. (*People v. Williams*, *supra*, E031301.)

On January 4, 2019, defendant filed a petition for resentencing pursuant to newly enacted section 1170.95. The trial court set a status conference on the petition for March 8, 2019. Prior to this status conference, the People filed a "Response to Penal Code Section 1170.95 Petition and Opposition to Order to Show Cause Based on Unconstitutionality of Senate Bill 1437 and Resulting Statutes," (People's response). The record does not indicate that the trial court ever issued an order to show cause. At the status conference, the trial court set a "Prima Facie Hearing" on April 19, 2019. During this time, defendant was

5

apparently under the impression that he was supposed to file an opposition to the People's response, as he sent a letter to the trial court requesting an extension of time to do so.

The trial court held the "prima facie hearing" on April 19, 2019. Defendant was represented by counsel at this hearing. Counsel was unsure whether a "reply" had been filed. The People stated that no reply had been filed, "[b]ut this was . . . a special circumstances case. . . . It required the jury to find that the defendant aided and abetted with intent to kill or was a major participant," and the appellate court "found sufficient evidence of a major participant [*sic*] and reckless indifference." After the People finished speaking, the trial court summarily denied the petition without further explanation. Defense counsel directed the court to defendant's letter asking for more time to file as evidence that defendant had tried to file a reply. The court commented, "I've gotten several where they've said 'You didn't appoint counsel,' even though counsel has been appointed, 'and that's why I need more time.' " It then reiterated that "the matter is summarily denied."

Defendant timely appealed.

### III. DISCUSSION

Defendant argues that the trial court improperly denied defendant's petition for resentencing because defendant did state a prima facie case for eligibility for and entitlement to relief. We disagree.[6]

---

[6] Defendant also argues that Senate Bill No. 1437 and section 1170.95 are constitutional. The People do not dispute the constitutionality of Senate Bill No. 1437 and section 1170.95. Accordingly, we do not address defendant's constitutionality arguments.

## A.     History of Senate Bill No. 1437

Senate Bill No. 1437 "which became effective on January 1, 2019, addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine by amending Penal Code sections 188 and 189, as well as by adding Penal Code section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722.)

Prior to Senate Bill No. 1437's enactment, a person who knowingly aided and abetted a crime, the natural and probable consequence of which was murder or attempted murder, could be convicted of not only the target crime but also of the resulting murder or attempted murder. (*People v. Chiu* (2014) 59 Cal.4th 155, 161, superseded by statute as stated in *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103; *In re R.G.* (2019) 35 Cal.App.5th 141, 144.) "This was true irrespective of whether the defendant harbored malice aforethought. Liability was imposed ' "for the criminal harms [the defendant] ... naturally, probably, and foreseeably put in motion." [Citations.]' [Citation.]" (*In re R.G.*, at p. 144.)

Senate Bill No. 1437 "redefined 'malice' in section 188.  Now, to be convicted of murder, a principal must act with malice aforethought; malice can no longer 'be imputed to a person based solely on [his or her] participation in a crime.' (§ 188, subd. (a)(3).)" (*In re R.G.*, *supra*, 35 Cal.App.5th at p. 144.)  "Senate Bill 1437 also amended section 189, which defines first and second degree murder, by, among other things, adding subdivision (e).

7

Under that subdivision, a participant in enumerated crimes is liable under the felony-murder doctrine only if he or she was the actual killer; or, with the intent to kill, aided and abetted the actual killer in commission of first degree murder; or was a major participant in the underlying felony and acted with reckless indifference to human life." (*People v. Munoz* (2019) 39 Cal.App.5th 738, 749.)

Senate Bill No. 1437 also added section 1170.95, which states that "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).) An offender may file a section 1170.95 petition if he or she was prosecuted under a felony murder or natural and probable consequences theory, but under amended sections 188 or 189, could not have been convicted of first or second degree murder. (§ 1170.95, subd. (a).)

### B.    Process for Review of a Petition under Section 1170.95

The trial court's review of a petition under section 1170.95 occurs in several phases. A petitioner must meet the standards of each before proceeding to an evidentiary hearing on the full merits of the petition. First, the trial court determines whether the petition is complete as defined in subdivision (b)—that is, whether it contains the minimum necessary components the statute requires of a petition. If the petition is facially adequate, the trial court next determines whether "the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) If so, the trial

court appoints counsel (if requested by the petitioner), and may extend the briefing schedule set by the statute.[7] The statutory deadlines require the People to file any opposition to the petition up to 60 days after the petition was served, and the defendant may serve any reply up to 30 days after the People's opposition is served. (§ 1170.95, subd. (c).) After briefing, the court determines whether the petitioner has stated a prima facie case that he or she is entitled to relief. If so, the court must issue an order to show cause and hold a hearing to determine whether to resentence the petitioner. (§ 1170.95, subds. (c)-(d).)

Section 1170.95, subdivision (c), thus requires the trial court to make two prima facie assessments. "The first is whether the petitioner has made a prima facie showing of *eligibility* for relief. A petitioner is eligible for relief if he or she makes a prima facie showing of the three criteria listed in section 1170.95[, subdivision] (a)—namely he or she (1) was charged with murder 'under a theory of felony murder or murder under the natural and probable consequences doctrine,' (2) was convicted of first or second degree murder, and (3) can no longer be convicted of first or second degree murder 'because of changes to Section 188 or 189 made effective January 1, 2019.' " (*People v. Drayton* (2020) 47

---

[7] When a petitioner is entitled to have counsel appointed is currently under review by our Supreme Court. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, review granted March 18, 2020, S260493; *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted March 18, 2020, S260598; *People v. Cornelius* (2020) 44 Cal.App.5th 54, review granted March 18, 2020, S260410.) However, pending further guidance from our Supreme Court, we agree with *Verdugo*, *Cornelius*, and *Lewis* and conclude that counsel need not be appointed until after a trial court concludes that the petitioner has made a prima facie showing that he or she falls within the provisions of the statute. (*Verdugo*, at p. 332-333; *Lewis*, at p. 1140; *Cornelius*, at p. 58.) We also agree with *Lewis* and *Verdugo*'s broader conclusion that section 1170.95 is laid out in chronological order and that events under it proceed in the order they are enumerated in the statute. (*Lewis*, at p. 1140; *Verdugo*, at p. 332.)

Cal.App.5th 965, 973.) "If the trial court determines a petitioner has made a prima facie showing of eligibility for relief, the court proceeds to the 'second' inquiry into the prima facie showing under section 1170.95[, subdivision] (c). [Citation.] In this second step, the trial [court] considers whether the petitioner has made a prima facie showing of entitlement to (rather than eligibility for) relief." (*Id.* at p. 976.)[8] Only after these first two prima facie review phases are complete, and the court is satisfied that the petition is meritorious under these standards, does it then issue an order to show cause and hold a hearing on the petition's merits.

C.    **The Record Indicates Defendant's Petition was Denied for Failing to State a Prima Facie Case for Entitlement to Relief**

The record in this case is unclear regarding exactly how the trial court proceeded through the above-explained phases of review, and most importantly, at which point it found defendant's petition lacking. After receiving the petition on January 4, 2019, the court set a "status conference" for March 8, 2019. On March 6, 2019, the People's response was filed. Two days later, the trial court held the scheduled status conference. The record does not

---

8    Defendant cites to *People v. Martinez* (2019) 31 Cal.App.5th 719, 723 and *In re Taylor* (2019) 34 Cal.App.5th 543, 562, for the proposition that once a petitioner makes a prima facie showing he or she falls within the provisions of section 1170.95, the court must then issue an order to show cause. Neither of these cases addressed what prima facie showing is required under section 1170.95, and only summarized the statute's procedures for context. Our colleagues in the Sixth District and elsewhere have more closely analyzed this provision of the statute and concluded that it requires two separate prima facie showings. (See *People v. Drayton*, *supra*, 47 Cal.App.5th at p. 976.) We agree with this approach. We also agree that the statute only requires the trial court to issue an order to show cause once it is satisfied that defendant has made a prima facie showing of entitlement to relief, not merely eligibility.

reflect what, if any, substantive findings the trial court made at this status conference. The court then set a "Prima Facie Hearing" for April 19, 2019. It was at this hearing that the court finally denied defendant's petition.

Given this timeline, it appears the trial court at least found defendant's petition facially sufficient. The trial court is empowered to deny a petition without prejudice "[i]f any of the information required by this subdivision is missing from the petition." (§ 1170.95, subd. (b)(2).) Thus, the fact the court did not deny the petition until after multiple hearings, including a "Prima Facie Hearing," indicates the petition was facially sufficient under section 1170.95, subdivision (b).

The question, then, is whether the court's denial of the petition at the "Prima Facie Hearing" was a denial based on defendant's failure to show prima facie eligibility for relief or entitlement to relief. We conclude it was the latter. As of the status conference, defendant was represented by counsel and the People's response had already been filed to defendant's petition. The "Prima Facie Hearing" was set more than 30 days after the status conference and the People's response. This time period conformed with the statute's deadline for defendant's reply. While the record is silent as to whether the court set a briefing schedule for defendant's reply, defendant's letter to the court requesting more time shows that he at least believed that the court expected a reply by a certain date. The parties were apparently under the impression that defendant had the opportunity to file a reply, as there was a brief colloquy between the parties regarding whether he filed a reply.

11

This sequence of events suggests that at some point prior to the "Prima Facie Hearing" the court concluded that defendant's petition showed prima facie eligibility under the provisions of section 1170.95, appointed counsel, and either ordered or at least permitted further briefing. The court's final "Prima Facie Hearing" occurred only after the statutory period for briefing on both sides had expired. Had the court concluded that defendant's petition did not show prima facie eligibility, it could have denied the petition without further briefing or hearing, before or after the status conference. That it appointed counsel and allowed for the petition to be fully briefed, as well as held two hearings on the petition, indicates the court was satisfied the petition met the first prima facie hurdle.

**D.      The Trial Court Erred by Not Issuing an Order to Show Cause**

Having resolved the question of whether the court found that defendant made a prima facie showing of eligibility for relief, we next turn to the "second" inquiry into the prima facie showing under section 1170.95, subdivision (c). In doing so, we consider whether the petitioner made a prima facie showing of entitlement to (rather than eligibility for) relief. The central issue is whether the trial court here erred in its implied finding that defendant did not make a prima facie showing of entitlement to relief.

*1.      Appellate Standard of Review*

There is currently only one case addressing the appropriate standard for review of the denial of a petition under section 1170.95, *People v. Drayton*, *supra*, 47 Cal.App.5th at p. 981. As that case notes, "[a]ppellate review of petitions in similar context, such as Proposition 47, typically involves multiple standards of review." (*Ibid.*) In Proposition 47

12

cases, we review the trial court's decision under a mixed question of law and fact standard. Thus, " '[w]here an appeal involves the interpretation of a statute . . . the issue on appeal is a legal one, which we review de novo. [Citation.] Where the trial court applies disputed facts to such a statute, we review the factual findings for substantial evidence and the application of those facts to the statute de novo. [Citation.] " '[A]n order is presumed correct; all intendments are indulged in to support it on matters as to which the record is silent, and error must be affirmatively shown.' " [Citation.] In addition, we must " 'view the record in the light most favorable to the trial court's ruling.' " ' " (*People v. Sledge* (2017) 7 Cal.App.5th 1089, 1095-1096.)

Here, the trial court never acted as a factfinder. It simply reviewed the petition and record of conviction to determine whether defendant made a prima facie showing of entitlement to relief. Therefore, we agree with the parties and review the trial court's determination that defendant failed to make a prima facie showing of entitlement to relief de novo.

2. *Trial Court's Review for Prima Facie Entitlement to Relief was Erroneous*

The statute does not set out a precise standard for how a trial court should review whether a petition states a prima facie case that the petitioner is entitled to relief. However, the statute uses identical language as that used in reviewing habeas corpus petitions. (Cal. Rules of Court, rule 4.551(c)(1) ["The court must issue an order to show cause if the petitioner has made a prima facie showing that he or she is entitled to relief."].) Thus, we agree with our colleagues in the Sixth District that though "habeas corpus procedures

provide an imperfect analogy to the statute . . . with respect to the trial court's assessment of whether the petitioner has made a prima facie showing of entitlement to relief under section 1170.95(c), we conclude habeas corpus procedures are sufficiently similar to provide a reasonable construction of the meaning of the relevant language in subdivision (c)." (*People v. Drayton*, *supra*, 47 Cal.App.5th at p. 980.)

When considering whether a habeas corpus petition makes a prima facie showing of entitlement to relief, "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." (*People v. Drayton*, *supra*, 47 Cal.App.5th at p. 978.) However, where the record "contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner." (*In re Serrano* (1995) 10 Cal.4th 447, 456.) Raising such contradictory material is often the central focus of any response to a petition, as such a response allows the contesting party to "demonstrate, by citation of legal authority and by submission of factual materials, that the claims asserted in the habeas corpus petition lack merit and that the court therefore may reject them summarily, without requiring . . . an evidentiary hearing." (*People v. Romero* (1994) 8 Cal.4th 728, 742.)

Using this standard, in ordinary circumstances, we might conclude that the trial court did not err by summarily denying the petition without issuing an order to show cause. Defendant's only relevant factual allegations were legally conclusory statements that he was not the actual killer, did not intend to kill, and was not a major participant or did not act with

14

reckless indifference to human life.  However, the People's response adduced record evidence contradicting defendant's factual allegation that he was not a major participant or did not act with reckless indifference to human life.  As the People point out, the jury in defendant's 2003 case found true the special allegation that at least one of the murders for which defendant was convicted occurred during a kidnapping and rape.[9]  This necessarily required the jury to find that defendant either acted with the intent to kill or was a major participant in the underlying crime who acted with reckless indifference to human life.  (See § 190.2, subd. (a)(17)(B)-(C); *People v. Estrada* (1995) 11 Cal.4th 568, 575 [Finding that a person may be sentenced to life in prison without the possibility of parole only if they are "found to have acted with 'reckless indifference to human life and as a major participant' in the commission of the underlying felony."].)  The People also presented the trial court with this court's opinion on direct appeal, which analyzed the evidence supporting the jury's special circumstances finding and found it was supported by substantial evidence.[10]

---

[9] Whether a trial court may "consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief," is currently under review by our Supreme Court.  (*People v. Lewis*, *supra*, 43 Cal.App.5th 1128, review granted March 18, 2020, S260598.)  Pending further guidance from our Supreme Court, we agree with *Lewis* and conclude that a trial court may look at the entire record of conviction, including the appellate court's opinion on direct appeal, to determine whether defendant has made either necessary prima facie showing.

[10] Defendant argues that a trial court may not "simply adopt the inferences and conclusions stated in this court's 2003 opinion," because we did not have the actual evidence before us when rendering our decision.  However, defendant concedes that trial courts are permitted to rely on appellate opinions, which are probative on certain factual questions.  (*People v. Woodell* (1998) 17 Cal.4th 448, 457.)  This includes reviewing an appellate court's opinion to determine certain facts underlying prior convictions.  (*People v. Hicks* (2014) 231 Cal.App.4th 275, 286.)  We agree with defendant that our inferences and

*[footnote continued on next page]*

15

However, as our colleagues in the Second District recently recognized, a true finding on a special circumstances allegation that a defendant was a major participant in an underlying felony and acted with reckless indifference to human life is not enough, on its own, to allow a trial court to conclude a petitioner is not entitled to relief under section 1170.95 where the finding occurred prior to our Supreme Court's recent clarification of the meaning of those terms.

In *People v. Torres* (2020) 46 Cal.App.5th 1168, 1178, review granted June 24, 2020, S262011, the trial court denied a petition under section 1170.95 because "the existence of the jury's 2001 robbery-murder special-circumstance findings alone established that Torres was 'a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2' [citation], as a matter of law, thereby barring him from relief." The court in *Torres* disagreed with the trial court's holding. It found that "[a]lthough the jury's special circumstances findings rendered in 2001 indicate that the jury concluded Torres was a 'major participant' who acted with 'reckless indifference to human life' in the murders . . . those jury findings alone do not preclude Torres from showing today that he could not be convicted of first or second degree murder as redefined by Senate Bill 1437." (*People v. Torres*, at p. 1179.) This conclusion was based upon our Supreme Court's recent narrowing of the definition of what it means to be a major participant or to act with reckless indifference to human life. (See *People v.*

conclusions are not themselves evidence, and do not establish any given fact except that we upheld defendant's conviction on appeal. But this does not preclude a trial court from finding our analysis of the facts persuasive when assessing whether a new sentencing scheme entitles a defendant to relief.

*Banks* (2015) 61 Cal.4th 788; *People v. Clark* (2016) 63 Cal.4th 522; *People v. Torres*, *supra*, 46 Cal.App.5th at p. 1179.)

Accordingly, findings that a defendant was a major participant or acted with reckless indifference to human life prior to our Supreme Court's decisions in *Banks* and *Clark* are not sufficient, on their own, to deny a petition under section 1170.95 for failure to state a prima facie case for entitlement to relief. The People argue in their brief in lieu of oral argument that the proper avenue for setting aside the prior finding that defendant was a major participant is for defendant to petition for a writ of habeas corpus. We agree with the People that a petition for writ of habeas corpus would be appropriate if defendant was seeking to challenge the validity of that finding. However, defendant is not seeking to overturn or set aside that prior finding, he is merely seeking relief under section 1170.95. That is, defendant is not arguing the original finding is or was invalid, he is arguing it does not preclude him, on its own, from obtaining relief under section 1170.95. We agree with defendant and with the court in *Torres* that the more recently enunciated clarification and explication of the terms "major participant" and "acting with reckless disregard for life" provided in *Banks* and *Clark* mean any findings regarding major participation or reckless indifference prior to those decisions are not enough to categorically bar defendants from obtaining relief under section 1170.95. In reviewing a petition under section 1170.95, the facts must be evaluated in light of the factors set forth in *Banks* and *Clark*. The trial court therefore erred when it denied defendant's petition on the basis of the prior finding regarding major participation and reckless indifference alone.

17

**E.      The Trial Court's Error was Harmless**

Although the trial court erred by concluding the special circumstance finding on its own meant defendant was not entitled to relief, we conclude the error was harmless because the record demonstrates defendant was a major participant who acted with reckless indifference to human life even under the standards set forth in *Banks* and *Clark*.  As a result, we conclude the denial of defendant's petition was proper.

Whether there is sufficient evidence that defendant was a major participant in the underlying crime who acted with reckless indifference to human life is a question we can decide on appeal.  A "[d]efendant's claim that the evidence presented against him failed to support [a] . . . murder special circumstance [finding made prior to *Banks* and *Clark*] . . . is not a 'routine' claim of insufficient evidence."  (*In re Miller* (2017) 14 Cal.App.5th 960, 979-980.)  The "claim does not require resolution of disputed facts; the facts are a given." (*Id.* at p. 980.)

In *Banks*, our Supreme Court described what is often referred to as the *Tison-Enmund* spectrum, after the United States Supreme Court's decision in *Tison v. Arizona* (1987) 481 U.S. 137 and *Enmund v. Florida* (1982) 458 U.S. 782.  "At one extreme" are people like the defendant in *Enmund*—" 'the minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state.' " (*Banks*, *supra*, 61 Cal.4th at p. 800.)  "At the other extreme [are] actual killers and those who attempted or intended to kill."  (*Ibid*.)  Section 190.2, subdivision (d), covers those people who fall " 'into neither of these neat categories' "—people like the Tison brothers, who

18

were major participants in the underlying felony and acted with a reckless indifference to human life. (*Banks*, at p. 800.)

Our Supreme Court articulated several factors intended to aid in determining whether a defendant falls into this middle category. The relevant questions are "[w]hat role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803.)

Several of these considerations weigh against defendant in this proceeding. The record of conviction discloses that at minimum defendant was present during the kidnapping, rape, and murder of Sherry M. His own statements infer that he witnessed his codefendant sexually assaulting Sherry M.: he was driving the car with the victim Sherry M. and codefendant in it during an ongoing kidnapping, during which Sherry M.'s head was in the codefendant's lap with her feet on the floorboard while codefendant sat in the front passenger seat. In addition, his statements indicate that he assisted his codefendant in disposing of her body—specifically that he "just snatched her out the car" when his codefendant shot Sherry M. and "threw her to the side of the road." (*People v. Williams*, *supra*, E031301.) The record of conviction also discloses that Vincent A. and Sherry M.'s

19

clothing was found in the same location, and Sherry M. and Vincent A. had been together earlier for many hours. This suggests defendant was present for the murder of Vincent A. as well, and therefore had actual knowledge that his codefendant had a deadly weapon and the willingness to use it.

Thus, even if defendant was only in the car when his codefendant shot Sherry M., he was actively aiding his codefendant kidnap Sherry M. after witnessing him kill her boyfriend. While the record is silent or ambiguous on some factors—namely, how involved defendant was in planning the crimes and whether he supplied the lethal weapon used— each of the other factors strongly point toward defendant being a major participant even under the factors set forth in *Banks*. Nor is it necessary for defendant's actions to meet all the relevant factors; as the court in *Banks* explained, "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Banks*, *supra*, 61 Cal.4th at p. 803.)

Because the record of conviction discloses sufficient evidence to support the jury's finding that defendant was a major participant who acted recklessly indifferent to human life even under the new *Banks* and *Clark* standards, the trial court's error in denying defendant's petition for failing to state a prima facie case of entitlement to relief was harmless.

## IV.  DISPOSITION

The order denying defendant's petition to vacate his murder conviction and for resentencing is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
                                                                          J.

We concur:

RAMIREZ
                    P. J.

RAPHAEL
                J.